## Young v. Commonwealth.

(Decided Dec. 10, 1937.)

66

JESSE MORGAN for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

In June, 1937, the grand jury of Perry county returned a true bill charging Kelly and Joe Young, brothers, with the murder of Ted Cornett. Severance was granted, and upon election appellant was tried first. He was found guilty, and his punishment fixed at twenty-one years in the penitentiary. He appeals.

It is contended that the court erred in refusing a continuance, because prior to the trial accused was so ill that he could not prepare his defense, and (2) that witnesses for proper defense were not present at the time of the trial.

The homicide occurred about 5 a. m. February 28, 1937, at a place called the "Rendezvous" which, as we gather from the proof, was one of those places now quite common, where there is conducted a combination of gasoline filling station, restaurant, night club, saloon, and sometimes gambling. The species is not new to us, since we have been frequently called on to review cases of homicides or near homicides occurring in or nearby such places.

On the occasion mentioned, appellant with other friends met at the People's Lunch. From thence they went to Pine Lodge, and later to the Rendezvous. Shortly after their arrival, Cornett and some of his friends arrived. Appellant and his brother, and perhaps others, remained inside until about time for it to close, then went to their car and found it out of gasoline. They started to the Rendezvous for gas, but found it closing and the guests departing in a rowdy manner. Some of the girls were pretty full, and it seems that it took considerable manhandling to get one of them in an auto-

mobile. Appellant noted this and made the remark, "if that was a daughter of mine she wouldn't be treated that way."

His brother Joe was with him, and when the above remark was made Cornett said, "What the hell is it your business." Clark, a companion of deceased, said that Joe Young asked, "What do you fellows want?" and Clark answered, "Not a thing," and Joe Young hit Clark and knocked him down, and "I heard a gun fire and looked in that direction and saw Kelly with a gun and said, "Kell, damn you, don't you shoot; you have already killed my brother-in-law,' and Kelly said, 'the rest of you stay where you are.'" The shot struck Cornett. He was taken to a hospital where he died shortly thereafter. Several witnesses testified that Cornett was not armed; that appellant was under the influence of liquor and Cornett sober. Some witnesses testified that Cornett made no motion with his hand.

Appellant says that he and deceased had been good friends. It developed that they had been together Saturday night in a gambling game, where trouble arose due to the fact that some one in the game "grabbed up" appellant's money, and he remonstrated, whereupon Cornett "turned the light out at the back table and reached up to turn the other one out," and appellant said: "Don't do that until I get my money back," and Ted said, "Get what you see and get out."

Appellant testified that on this particular Saturday afternoon he had brought some of his family to town, and later on he and a friend took them home. They then went back to town where the above-mentioned game was in progress. After the game broke up they spent some time in looking for some one, who was finally located at the Rendezvous. They succeeded in getting their friend started homeward, and appellant then went back to the Rendezvous, and there met his brother Joe, who said to him, "Kelly, lets go, I saw Ted Cornett and he was asking about you." They then went outside to their car, and in going to Jarvis' place for gas his party met Clark and Cornett, whereupon appellant made some remark about the rough handling of the girl, and Clark hit Joe (his brother), and "Jim hollered 'shoot him Ted,' and about that time I shot Ted." Appellant said that Cornett had his right hand in his pocket and he thought he was after his gun, and

shot because he believed that he and his brother were in danger.

The grounds advanced for reversal relate solely to procedure. The indictment was returned on June 16, 1937. On the 17th appellant executed bond for appearance. When the case was called on July 1, appellant did not answer, and bond was forfeited. Later, on the same day, he appeared and moved to set aside the forfeiture, which motion was sustained. On this motion appellant filed his affidavit to the effect that when the case was called he was ill. He also filed affidavit of a physician. Since the latter affidavit bears on the question of the court's refusal to continue the case, we shall quote it in part. The affiant, after saying he was the physician for the mines in which appellant was employed, and that he was well acquainted with him, said:

"Kelly Young has had some severe attacks of lumbago, which have very materially affected him, and rendered him unable to work or be active at times for a period of as much as five weeks. He has been treated for this trouble at times since he has been at Allais Camp. This lumbago * * * has to a certain extent affected defendant's kidneys, and the attacks he has are rather severe."

Affiant also says he was called to see him early on the morning of July 1; that he was complaining of "generalized pain, backache and headache, chilly sensation and nausea, and treatment was given accordingly." Appellant's affidavit also stated that his reason for not appearing on the call of the case was due to illness. After the court had set aside the order forfeiting the bond, appellant moved for a continuance of his case on account of his poor physical condition, as set up in the affidavit, and that of his physician, and because of the absence of witnesses.

The court overruled this motion, and appellant urges that this was prejudicial to his constitutional rights. In addition to the showing of his condition of health, which he claimed interfered with the preparation of his case, it developed that of the ten or twelve witnesses, who had been subpœnaed, only a few answered. He then says these absent witnesses were material to his defense. However, he failed to say in his affidavit what the witnesses would state if present, which omission was fatal. The case was not tried on

July 1, but called on the following day, when appellant renewed his motion for a continuance, reiterating what had been said in his first affidavit, supported by the one of his physician. He did allege, with more force in this affidavit, that due to a previous physical condition he was unable to prepare his defense. He had conferred with his attorneys on the previous day, but he was then ill and compelled to go home before completing his conference. He also stated that his condition was the same on "this day," and that he was "physically unable to undergo the strain of a trial," or to render assistance to his counsel. He reiterated the absence of witnesses, about twelve in number, for whom he had procured process, all within the jurisdiction of the court, save two, whose testimony he said, as he did in relation to all the others, was material to his defense, since some of them were present at the time of the homicide. But here, as before, appellant failed to set out in substance the testimony of the absentees.

This renewed motion was overruled, and the trial proceeded with the result as stated. The argument presented here by counsel for appellant is based solely on the contention that the court should have granted a continuance on account of the showing made. The weakness, if not the fatality, of his affidavit is in appellant's failure to demonstrate to the court that the testimony of the absentees was "material to his defense," since he failed to allege that any one would claim presence at the time of the difficulty, much the less as to what they would say occurred on the occasion. In this particular we cannot conclude that the court erred in refusing to continue the case to secure witnesses, whose proposed testimony he had no opportunity to gauge. Carter v. Com., 258 Ky. 807, 808, 81 S. W. (2d) 883; section 189, Criminal Code of Practice.

While appellant described a somewhat serious physical condition, his doctor nowhere says that it was such that on the day of the trial he could not be present in court, nor properly conduct, nor theretofore have prepared his defense. His case was not a complicated one; he was present and testified. It may be assumed that he did give some help to his attorney, and we note from the record that his brother Joe, indicted with appellant, and who, if the motion for severance had not been sustained, would have been tried at the same time, was absolved from the separation of witnesses' rule, so

that he could, and he did, assist at his counsel's table. The court allowed this, because it was shown that appellant was somewhat deaf. Appellant seems to have gotten through the trial without any physical suffering. He testified in a straightforward way, making his defense in an intelligent manner, so we cannot say the court made a mistake in refusing continuance. Ellison v. Com., 195 Ky. 370, 242 S. W. 368. The court has a wide discretion in such matters, and we are of the opinion it was not abused in refusing to continue on the showing made. Upon motion for a new trial appellant filed another affidavit, in which he reiterated the allegations of that made on motion for continuance, and which did set out to some extent what absent witnesses would have said if present. This affidavit did not cure the defects in the previous ones. If it might be considered as advancing reasons for a new trial on the grounds of newly discovered evidence, it is inefficacious, because of the apparent fact that it names and relates to the same parties named in the first affidavits, with perhaps one exception, that of Riley, but whose evidence as we view it, would only have related to appellant's whereabouts previous to the homicide.

We have given careful consideration to the record and the arguments presented, noting a supplemental or reply brief filed by appellant and which only emphasizes the arguments presented in the original brief. However, we have failed to find in the entire record any action of the court which was unfair or prejudicial to the rights, constitutional or otherwise, of appellant.

Judgment affirmed.